UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **Lindsay Carlson and Corinna Waters,** | § § § | |
| *Plaintiffs*, | § § | Civil Action No. _____ |
| v. | § § § | |
| **Condominium Consulting & Management Services, LLC** and **Sandpiper Condominium Council of Owners, Inc.** | § § § § § | **JURY TRIAL DEMANDED** |
| *Defendants.* | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs—Lindsay Carlson and Corinna Waters (collectively, "Plaintiffs")—come now and file their Original Complaint, against Defendants Condominium Consulting & Management Services, LLC ("CCMS") and Sandpiper Condominium Counsel of Owners, Inc. ("Sandpiper") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e1–17 ("Title VII"), and the Texas Labor Code, Chapter 21 because Defendants sexually harassed them due to sex discrimination and subsequently retaliated against them.

## I.
## OVERVIEW

1. This is a case of quid-pro-quo sexual harassment due to sex discrimination and retaliation brought pursuant to Title VII and the Chapter 21 of the Texas Labor Code.

2. Plaintiffs suffered tangible employment actions due to their refusal of Defendants' sexual harassment.

3. Further, Defendants retaliated against Plaintiffs after they engaged in protected activity and complained about the sexual harassment they were experiencing.

4. Plaintiffs seek to recover compensatory and punitive damages that arose as a result of Defendants' unlawful acts, and all statutory damages relating to Plaintiffs' Federal and Texas state law claims. Plaintiffs also seeks injunctive and equitable relief.

## II.
## THE PARTIES

5. Plaintiff Lindsay Carlson is a former employee of Defendants and was employed by Defendants at the time her cause of action accrued.

6. Plaintiff Corinna Waters is a former employee of Defendants and was employed by Defendants at the time her cause of action accrued.

7. Defendant Condominium Consulting & Management Services LLC is a domestic limited liability company, licensed to and doing business in Texas, and can be served with process through its registered agent, Charles W. Crawford, Sr., 200 SO. Alister Street, Suite C, Port Aransas, TX 78373.

8. Defendant Sandpiper Condominium Council of Owners, Inc., is a domestic corporation, licensed to and doing business in Texas, and can be served with process through its registered agent, Condominium Consulting & Management Services, LLC, 200 SO. Alister Street, Suite C, Port Aransas, TX 78373.

## III.
## JURISDICTION & VENUE

9. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and because Plaintiffs' claims are brought pursuant to Title VII.

10. This Court has supplemental jurisdiction over Plaintiffs' Texas state law claim pursuant to 28 U.S.C. § 1367 and supplemental jurisdiction over Plaintiff's Texas state-law claims pursuant to 28 U.S.C. § 1367.

11. This Court has general personal jurisdiction over Defendants because they maintain their principal office(s) in Texas and Texas qualifies as their home state.

12. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiffs' claim occurred within this District and Division.

## IV.
## CONDITIONS PRECEDENT AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. On or about September 22, 2022, Plaintiff Carlson filed a charge of discrimination based on sex and retaliation against Defendants, Charge Numbers 451-2022-03740 (CCMS) and 451-2022-03701 (Sandpiper), with the Equal Employment Opportunity Commission ("EEOC").

14. On or about September 22, 2022, Plaintiff Waters filed a charge of discrimination based on sex and retaliation against Defendants, Charge Numbers 451-2022-03738 (CCMS) and 451-2022-02872 (Sandpiper), with the Equal Employment Opportunity Commission ("EEOC").

15. On August 3, 2023, the EEOC issued a Notice of Right to Sue in all matters.

16. Plaintiffs filed their Complaint within 90 days of receipt of the Right to Sue issued by the EEOC.

17. All conditions precedent for the maintenance of this action have been met. Plaintiffs have exhausted their administrative remedies under State and Federal law.

## V.
## ADDITIONAL FACTS

### Defendants are Joint Employers

18. Defendant CCMS is a Texas based management company specializing in the management of resort properties and homeowners' associations.

19. Defendant Sandpiper is a Texas condominium association and operates approximately 95 condominiums located at 6745 Seacomber Drive, Port Aransas, Texas.

20. CCMS manages Sandpiper's condominiums.

21. Upon information and belief, at all times relevant to this suit Sandpiper and CCMS (individually and together") have more than 15 employees.

22. Defendants employed Plaintiff Carlson as a Front Desk Clerk and later, the Front Desk Supervisor, from approximately January of 2022, until approximately April 21, 2023.

23. Defendants employed Plaintiff Waters as a Front Desk Clerk from approximately October 1, 2019, until April 17, 2023.

24. Defendant CCMS is the employer of Johnathan Lee, the General Manager of Sandpiper Condominiums.

25. Sandpiper is the employer of Plaintiffs Carlson and Waters.

26. Together, by and through the General Manager, Defendants controlled Plaintiffs' work schedules and conditions of employment.

27. Defendants provided the tools, material and equipment Plaintiffs needed to perform their job duties.

28. Together, by and through the General Manager, Defendants dictated what job duties and tasks that Plaintiffs needed to perform while employed.

29. Together, by and through the General Manager, Defendants assigned projects to Plaintiffs and did so.

30. Defendants had the power to hire, fire, and discipline Plaintiffs.

31. Defendants acted interchangeably with Plaintiffs during their employment.

32. Defendants maintained control, oversight, and direction over Plaintiffs during their employment, including the promulgation and enforcement of policies.

33. Specifically, Defendants participated in the initial investigation of Plaintiffs' claims of sexual harassment.

34. Defendants mutually benefitted from the work performed by Plaintiffs.

35. Defendants did not act entirely independently of each other and have not been completely disassociated with respect to the work of Plaintiffs.

36. Defendants acted directly or indirectly in the interest of each other in relation to Plaintiffs.

37. Defendants maintained and controlled Plaintiffs employment records.

38. As a result, both Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of Title VII.

**Plaintiffs Suffered Quid-Pro-Quo Sexual Harassment Due to Sex Discrimination**

39. On or about June 21, 2022, Plaintiff Waters provided her supervisor, Plaintiff Carlson a written letter in which she outlined instances when her General Manager, Johnathan Lee, sexually harassed her.

40. This June 21, 2022 Letter of Complaint put CCMS and Sandpiper on notice of the General Manager's improper (and illegal) conduct. The letter identified multiple instances in which the General Manager (1) invaded Water's personal space by resting his body suggestively behind her chair for extended periods of time, (2) reached over her breasts to answer phone calls, in some instances touching her breasts in the process; (3) made inappropriate, lewd, and suggestive comments

about the bodies of female Sandpiper residents and guests to (and in the presence of) Waters; and (4) in one instance grabbed an electric drill and placed in over his groin to sexually arouse himself.[1]

41. Plaintiff Carlson, who had also experienced sexual harassment from the General Manager, immediately forwarded Plaintiff Waters' letter to David Haas, Operations Manager for Sandpiper. Mr. Haas then forwarded Plaintiffs' Letter of Complaint to CCMS Management, Chuck Crawford and Casey Patterson.

42. Defendants investigated the sexual harassing actions described in the Letter of Complaint and scheduled a meeting with both Plaintiffs Carlson and Water.

43. During the meeting, Plaintiffs reiterated their concerns regarding the General Manager's inappropriate conduct, crude sexual remarks, and crude sexual acts in their presence.

44. Plaintiffs informed Defendants that the General Manager does not engage in this type of conduct when similarly situated male front desk workers are present.

45. At the conclusion of the meeting CCMS management suggested that the actions and behaviors did not constitute harassment and CCMS intimated Plaintiffs were dishonest in their Letter of Complaint.

46. After Defendants became aware that Carlson retained counsel, the General Manager advised Plaintiffs that he was "hiring their replacements."

47. Additionally, in September 2022, CCMS and Sandpiper provided all its employees a market increase raise.

48. Notably, Plaintiffs Carlson and Waters did not receive a raise.

49. After Plaintiffs provided Defendants with their Letter of Complaint, CCMS and Sandpiper have retaliated against Plaintiffs.

---

[1] This was captured on video. However, the video has been destroyed since Plaintiffs filed their charges with the EEOC.

50. Defendants withheld the standard market increase raise provided to all of the other employees.

51. Additionally, Defendants withheld Ms. Carlson's quarterly bonus that, prior to her complaints of sexual harassment, had routinely been paid to her.

52. Plaintiffs were ultimately constructively discharged as a result.

53. Due to Defendants' sexual harassment and subsequent retaliation, Plaintiff Carlson and Waters were constructively discharged on April 21 and 17, 2023, respectively.

## VI.
## CAUSES OF ACTION

### COUNT ONE
**(Quid-Pro-Quo Sexual Harassment Due to Sex Discrimination)**

54. All previous paragraphs are incorporated as though fully set forth herein.

55. "Substantively, a plaintiff proves her prima facie case of quid-pro-quo sexual harassment by showing: '(1) the employee belongs to a protected group; (2) the employee is subjected to unwelcome harassment; (3) the harassment is based on sex; (4) the employee's refusal of the unwelcome harassment causes a tangible job detriment; and (5) there exists some ground to hold the employer liable.'" *House v. Interline Brands, Inc.*, 464 Fed. Appx. 402, 404 (5th Cir. 2012).

56. Plaintiffs belong to the protected class by virtue of being female.

57. Plaintiffs were subject to unwanted sexual harassment from their General Manager.

58. Other male employees were not subject to the same sexual harassment.

59. As a result, the female Plaintiffs were subjected to the unwanted sexual harassment due to their sex.

60. Plaintiffs' refusal to the unwanted sexual harassment caused tangible job actions including Defendants' denial of Plaintiffs' market increase raises as well their ultimate constructive discharge.

61. Defendants—Plaintiffs' employers—are liable for the actions of their employee, the General Manager, who was acting within the scope of his employment when he engaged in sexually harassing conduct.

62. Defendants were made aware of the sexual harassment when they received Plaintiffs' Letter of Complaint.

63. Defendants failed to take any action to mitigate the harm done by their employee, the General Manager.

64. In fact, Defendants enabled the General Manager's conduct to the detriment of the Plaintiffs.

65. As a result of Defendants' discrimination, Plaintiffs have suffered loss of wages and benefits, in the past, as well as emotional pain and mental anguish in the past, which they will continue to experience in the future.

## COUNT TWO
### (Retaliation for Opposing Discrimination)

66. All previous paragraphs are incorporated as though fully set forth herein.

67. Defendants retaliated against Plaintiffs after they opposed the sexual harassment they were experiencing in violation of 42 U.S.C. § 2000e-3(a).

68. Specifically, Plaintiffs were engaged in protected activity when they opposed sexual harassment in the workplace and submitted their Complaint to Defendants.

69. After Plaintiffs submitted their Complaint to Defendants about the unlawful sexual harassment, Defendants retaliated against Plaintiffs by denying them their market increase raises that each of their counterparts received.

70. Plaintiffs were retaliated against because they opposed an act or practice made unlawful by the applicable laws and thus, Plaintiffs were entitled to the anti-retaliation protections of 42 U.S.C. § 2000e3.

71. Because of Defendants' retaliation, Plaintiffs were damaged and continues to be damaged.

72. Plaintiffs suffered an adverse, tangible employment action.

73. As a result of Defendants' retaliation, Plaintiffs has suffered loss of wages and benefits, in the past, as well as emotional pain and mental anguish in the past, which in all probability they will continue to experience in the future.

## COUNT THREE
**(Alleging Violation of the Texas Labor Code)**

74. All previous paragraphs are incorporated as though fully set forth herein.

75. Defendants were an employer and Plaintiffs were an employee as those terms are defined under Chapter 21 of the Texas Labor Code.

76. At all times subject to this complaint, Defendants have had more than 15 employees.

77. Plaintiffs opposed a discriminatory and unlawful employment practice of Defendants, namely sexual harassment.

78. As a direct result of Plaintiff's opposition to Plaintiffs being sexually harassed, Defendants retaliated against Plaintiffs by treating them differently than all other employees.

79. Plaintiffs were harmed by Defendants actions; to wit, not receiving Market raises as all other employees did.

80. Defendant's practices were not justified for any reason, including on the basis of business necessity.

## VII.
## DAMAGES

81. As a direct and proximate result of the wrongful acts and/or omissions of Defendants, Plaintiffs have suffered damages, including but not limited to past and future:

a. Pecuniary loss;

b. Lost wages, salaries, and/or other benefits;

c. Lost earning capacity;

d. Back pay;

e. Interest on back pay;

f. Mental anguish damages;

g. Emotional pain and suffering;

h. Loss of enjoyment of life and/or physical impairment;

i. Inconvenience;

j. Other non-pecuniary loss;

k. Compensatory damages;

l. Actual monetary losses;

m. Liquidated and/or statutory damages;

n. Pre and post judgment interest;

o. Other interest allowed by law;

p. Costs of court;

q. Legal expenses, expert fees, and attorneys' fees pursuant to Title VII (including but not limited to 42 U.S.C. § 2000e-5(k))

## VIII.
## INJUNCTIVE AND EQUITABLE RELIEF

82. Plaintiffs are entitled to injunctive and equitable relief pursuant to law. Plaintiffs requests the court provide equitable and injunctive relief including but not limited to: an injunction

prohibiting Defendants from engaging in the unlawful employment practices alleged in this complaint, reinstatement, restoration of benefits, make-whole remedies and other equitable relief.

## IX.
## PRAYER

Plaintiffs pray that Defendants be cited to appear and answer and that upon final hearing they recover judgment against Defendants for the following:

a. All actual damages resulting from Defendants' acts and/or omissions;

b. All statutory and/or liquidated damages allowed by law;

c. Equitable relief including, but not limited to, injunctive relief;

d. Legal expenses, expert fees and attorney's fees through trial, appeal and review by the Supreme Court of the United States;

e. Costs of court;

f. Pre and post judgment interest at the maximum rate allowed by

law; and

g. For an Order granting such other and further relief as may be necessary and

appropriate.

Date: November 1, 2023        Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By: */s/ Clif Alexander*
**Clif Alexander**
Federal I.D. No. 1138436
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson**
Federal I.D. No. 777114
Texas Bar No. 24045189
austin@a2xlaw.com
**Thomas Locke Henry**
Federal ID No. 3662374
Texas Bar No. 24118408
Locke@a2xlaw.com
101 N. Shoreline Blvd, Suite 610

Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys in Charge for Plaintiffs***